Phillip W. SNYDER, Plaintiff,

v.

INTERNAL REVENUE SERVICE and John A. Dietrich, Agent, Defendants.

Civ. No. F 84–211.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Oct. 18, 1984.

Phillip W. Snyder, pro se.

Peter Sklarew, Civ. Trial Sec., Tax Div., Dept. of Justice, Washington, D.C., David H. Miller, Asst. U.S. Atty., Fort Wayne, Ind., for defendants.

## ORDER

LEE, District Judge.

This matter is before the court on defendants' Motion to Dismiss and for an Award of Attorneys' Fees and Costs filed August 28, 1984. For the following reasons, defendants' motion will be granted in its entirety.

Plaintiff is proceeding *pro se*. *Pro se* pleadings are to be liberally construed. *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). This court also recognizes that federal courts have historically exercised great tolerance to insure that an impartial forum remains available to plaintiffs invoking the jurisdiction of the court without the guidance of trained counsel. *Pro se* complaints, such as plaintiff's, are held to less stringent pleading requirements; technical rigor in the examination of such pleadings is inappropriate.

Liberally construing plaintiff's complaint and numerous other filings, as well as plaintiff's comments made at the preliminary pre-trial conference held in Open Court on August 27, 1984, it appears that the plaintiff is contesting the withholding of his wages by his employer as part of the statutorily defined scheme for collecting income taxes. Plaintiff believes that he is not subject to the Internal Revenue Code of 1954 ("Code"), and that by the assessing of taxes against him, the assessing of fines for the filing of certain W–4 forms in which plaintiff claimed an "exempt status," and the threat of a possible levy of his property should he fail to pay the taxes, plaintiff's constitutional rights have been harmed. The list of the rights allegedly violated grows with each pleading plaintiff filed in this court. In Open Court, plaintiff delineated the following: (1) violation of the fourth amendment because his property was "seized" when money was withheld from his paycheck; (2) deprivation of due process because plaintiff asked for appeal and then was told it was denied; (3) violation of the fifth amendment right of self-incrimination because the Internal Revenue Service ("IRS") asked for records and information but denied plaintiff's request of being protected from being a witness against himself. In filings after the hearing, plaintiff has also claimed violations of the fourth amendment for the assessment of two separate $500.00 fines for attempt-

ing to fill out false W–4 forms, and that the Final Notice of Tax Deficiency sent to plaintiff constituted a Bill of Pains and Penalties. Plaintiff seeks an injunction and $900,000 in damages. The complaint was originally filed in state court, and removed to this court on motion of the defendants.

Defendants have responded by filing a motion to dismiss. The thrust of the motion is two-fold: (1) neither of the defendants can be sued because they are protected by immunity; and (2) all allegations in the complaint are without merit, and therefore subject to dismissal. Defendants have also moved for fees and costs for defending this action.

The court begins with the motion to dismiss.

## I. MOTION TO DISMISS

■ Although the defendants have characterized their motion as a motion to dismiss, it is clear that the issues presented by this motion are best addressed after reference is made to the exhibits, pleadings, and statements made in Open Court in this case. When matters outside the pleadings are presented to and not excluded by the court, a motion to dismiss will be converted into a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 12(b).

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may only be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Thus, summary judgment serves as a vehicle with which the court "can determine whether further exploration of the facts is necessary." *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975).

■ In making this determination, the court must keep in mind that the entry of summary judgment terminates the litiga-

tion, or an aspect thereof, and must draw all inferences from the established or asserted facts in favor of the non-moving party. *Peoples Outfitting Co. v. General Electric Credit Corp.*, 549 F.2d 42 (7th Cir.1977). A party may not rest on the mere allegations of his pleadings or the bare contentions that an issue of fact exists. *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). *See also Atchison, Topeka & Santa Fe Railway v. United Transportation Union*, 734 F.2d 317 (7th Cir.1984); *Korf v. Ball State University*, 726 F.2d 1222 (7th Cir.1984). *See generally* C. Wright, *Law of Federal Courts*, § 99 (4th ed. 1983); 6 *Moore's Federal Practice*, § 56.15 (2d ed. 1984).

■ Thus, the moving party must demonstrate the absence of a genuine issue of material fact. The court views all evidence submitted in favor of the non-moving party. Even if there are some disputed facts, where the undisputed facts are the material facts involved and those facts show one party is entitled to judgment as a matter of law, summary judgment is appropriate. *Egger v. Phillips*, 710 F.2d 292, 296–97 (7th Cir.1983); *Collins v. American Optometric Assn.*, 693 F.2d 636, 639 (7th Cir.1982). Further, if the court resolves all factual disputes in favor of the non-moving party and still finds summary judgment in favor of the moving party is correct as a matter of law, then the moving party is entitled to summary judgment in his favor. *Egger*, 710 F.2d at 297. *See also Bishop v. Wood*, 426 U.S. 341, 348, 348 n. 11, 96 S.Ct. 2074, 2079, 2079 n. 11, 48 L.Ed.2d 684 (1976).

■ Although not raised by the defendants directly in their motion to dismiss, the court turns first to the issue of whether a proper basis for jurisdiction exists for hearing this cause. Because of the limited nature of a district court's jurisdiction, the court may inquire into its jurisdiction *sua sponte*. *Rice v. Rice Foundation*, 610 F.2d 471 (7th Cir.1979).

## A. Jurisdiction

Plaintiff's original complaint asserted two bases for jurisdiction: the United States and Indiana constitutions. Under a section entitled "Venue," plaintiff also cites to 42 U.S.C. §§ 1981, 1983, and 1986, the civil rights statutes, and 18 U.S.C. §§ 241, 242, criminal statutes. None of these provisions give this court adequate jurisdiction to hear this cause.

■ The civil rights statutes, 42 U.S.C. §§ 1981, 1983, and 1986 cannot provide jurisdiction in actions against the assessment or collection of taxes. Section 1981 is restricted by the import of its language to discrimination based on race or color. *Virginia v. Rives*, 100 U.S. (10 Otto) 313, 25 L.Ed. 667 (1880); *Willingham v. Macon Telegraph Publishing Co.*, 482 F.2d 535, 537 n. 1 (5th Cir.1973). In fact, the language of § 1981 militates *against* plaintiff's case, because the section provides that "all persons" shall be subject to taxes. Section 1983 prohibits deprivation of rights under color of state law. However, actions of IRS officials, even if beyond the scope of their official duties, are acts done under color of federal law and not state law, thus making § 1983 inapplicable. *Seibert v. Baptist*, 594 F.2d 423 (5th Cir.1979), *cert. denied*, 446 U.S. 918, 100 S.Ct. 1851, 64 L.Ed.2d 271 (1980); *Mack v. Alexander*, 575 F.2d 488, 489 (5th Cir.1978). Section 1986 creates a cause of action for failure or neglect to prevent a § 1985 conspiracy. However, § 1985(1) deals with conspiring to prevent an official from discharging his duties, while § 1985(2) deals with obstructing justice, both of which are inapplicable here. Section 1985(3) requires that there be "some racial, or perhaps otherwise class-based, invidiously discriminating animus behind the conspirators' action," *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971); *Dunn v. State of Tennessee*, 697 F.2d 121 (6th Cir.1982), *cert. denied*, 460 U.S. 1086, 103 S.Ct. 1778, 76 L.Ed.2d 349 (1983), none of which is present here. It is therefore obvious that none of these statutory provisions can provide plaintiff with a basis for suit.

■ A similar conclusion results after analyzing 18 U.S.C. §§ 241 and 242, which are also offered by the plaintiff as grounds for "venue." Section 241 makes it a crime for two or more persons to conspire to injure the rights of a citizen, while § 242 makes it a crime to violate the civil rights of a person. In short, they are simply the criminal law versions of 42 U.S.C. §§ 1985 and 1983. As such, plaintiff's civil action cannot be based on the criminal statute but must be based on the statutes granting a civil cause of action (§§ 1983 and 1985), which are not present here. Plaintiff seems to admit that §§ 241 and 242 do not give him a private cause of action when he states "Title 18 U.S.C. was quoted in original Complaint in case a grand Jury wished to bring additional Criminal charges. Also, if the United States of America wished to police the actions of the defendants." Plaintiff's Answer to the Court in re of Instruments Submitted by the Defendants, filed September 14, 1984, ¶ D–2(d), p. 6. Thus, this court gains no jurisdiction over this action by virtue of 18 U.S.C. §§ 241 or 242.

■ The only other basis for jurisdiction is 28 U.S.C. § 1331, the federal question jurisdiction statute. Plaintiff claims that the tax laws do not apply to him because the laws are unconstitutional. He also claims that certain constitutional rights were violated by the actions of the defendants. This is sufficient to give rise to some kind of federal question jurisdiction based on the constitutional issues involved in such claims. However, not all aspects of the plaintiff's claims are cognizable under this jurisdiction.

Plaintiff has made clear that he does not seek a tax refund. Rather, he wants injunctive relief and damages. As to injunctive relief, plaintiff's claim is barred by 26 U.S.C. § 7421, which provides in pertinent part that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is

the person against whom such tax was assessed." Nor does the judicially created exception to this anti-injunction provision, outlined in *Enochs v. Williams Packing and Navigation Co.*, 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962), apply here because neither one of its elements (that government cannot prevail on the merits and plaintiff has no adequate remedy at law) is present in this case. Thus, this court has no jurisdiction to grant injunctive relief.

As for damages, the plaintiff must show that he can recover damages for violations stemming from the defendants' alleged unconstitutional activity. Plaintiff can obtain damages against the defendants under only one of two theories: a claim under the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680; or an implied cause of action under the principles of *Bivens v. Six Unknown Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1977). As will be more fully discussed in section I.B. of this order, a claim under the Federal Tort Claims Act will fail on principles of sovereign immunity. Furthermore, in *Seibert v. Baptist*, 594 F.2d 423, 429–32 (5th Cir. 1979), *cert. denied*, 446 U.S. 918, 100 S.Ct. 1851, 64 L.Ed.2d 271 (1980), the court refused to recognize a *Bivens*-type cause of action against the IRS and IRS officials and agents. The actions of the present defendants in assessing the taxes and penalties against the plaintiff and in generally operating under the IRS regulatory framework were not of the outrageous nature of those found in *Bivens*. This court agrees with the *Seibert* court and refuses to recognize a *Bivens*-type cause of action against the IRS or IRS officials and agents for the collection and assessment of taxes.

Thus, while a federal question may exist, it provides no basis for plaintiff to recover injunctive relief or damages. At the very best, it would allow this court to declare the Internal Revenue Code unconstitutional (which the court *does not do*) as a prelude to a refund suit, which plaintiff explicitly states he is not now pursuing. In short, federal question jurisdiction does not support plaintiff's suit.

On the issue of jurisdiction, then, this court finds that it has no jurisdiction over any of plaintiff's claims with the exception of extremely limited federal question jurisdiction over the question of the constitutionality of the Internal Revenue Code. However, out of an abundance of caution and a desire to give plaintiff a full review of his case, the court continues by analyzing the other issues in the Motion to Dismiss.

### B. The "Suability" of the Defendants

A main thrust of defendants' Motion to Dismiss is that none of the named defendants can be sued. Plaintiff has named two defendants: the IRS; and John Dietrich, an IRS agent. Because the defendants' arguments revolve around the status of these defendants and whether such status allows the particular defendant to be sued, the court will analyze each defendant separately.

#### 1. The Internal Revenue Service

The core of defendants' argument about the inability of plaintiff to sue the IRS is the doctrine of sovereign immunity. It is well settled that the United States is a sovereign and, as such, is immune from suit without its prior consent. *United States v. Shaw*, 309 U.S. 495, 500–01, 60 S.Ct. 659, 661, 84 L.Ed. 888 (1940); *Hutchinson v. United States*, 677 F.2d 1322, 1327 (9th Cir.1982); *Akers v. United States*, 539 F.Supp. 831, 832 (D.Conn.1982), *aff'd*, 718 F.2d 1084 (2d Cir.1983). Absent consent to sue, dismissal of the action is required. *Hutchinson*, 677 F.2d at 1327. The United States has waived its immunity with respect to some causes of action in the Federal Tort Claims Act, 28 U.S.C. §§ 1346 and 2671–2680. However, the Act, in § 2680(c), specifically excluded "any claim arising in respect of the assessment or collection of any tax or customs duty...." It is thus clear that the United States has specifically reserved its immunity with respect to claims arising out of tax collection and assessment. Thus, to the extent that any part of plaintiff's complaint can be construed as a claim against the United

States, it is barred by the doctrine of sovereign immunity. *See Hutchinson; Seibert v. Baptist*, 594 F.2d 423 (5th Cir.1979), *cert. denied*, 446 U.S. 918, 100 S.Ct. 1851, 64 L.Ed.2d 271 (1980); *White v. Commissioner*, 537 F.Supp. 679, 684 (D.Colo.1982).

Plaintiff has attempted to make clear that his claim is not against the United States, but rather against the IRS. That is of little help to plaintiff because courts have found that the actions of the IRS or its agents fall under the Federal Tort Claims Act exception for collection and assessment of taxes. *See Morris v. United States*, 521 F.2d 872, 874 (9th Cir.1975); *Spilman v. Crebo*, 561 F.Supp. 652, 654–55 (D.Mont.1982). It is therefore clear that the IRS is immune from suit for tax collection or assessment activities.

 Plaintiff apparently believes that this conclusion is avoided by his assertion that the IRS is a "private corporation," and not a part of the United States. Plaintiff offers two arguments for this conclusion. The first is that the IRS was never created by "positive law" (i.e., a statute of Congress) but by fiat of the Secretary of the Treasury in 1952. It is clear, however, that the Internal Revenue Code of 1954, a statute of Congress, gave the Secretary of the Treasury full authority to administer and enforce the Code, 26 U.S.C. § 7801, and the power to create an agency to administer and enforce the tax laws. *See 26 U.S.C. § 7803(a)*. Pursuant to that legislative grant of authority, the Secretary created the IRS, 26 C.F.R. § 601.101, so that the IRS is an agency of the Department of the Treasury, created pursuant to Congressional statute. As such, the IRS is a creature of "positive law," and an agency of the federal government, not a private corporation.

 The second argument for the IRS being a "private corporation" is that the

IRS deposits the tax revenues in the federal reserve banks, and thus acts as a "collection agent" for those banks, who use the money to make loans, and conduct proprietary business, thus removing the cloak of governmental immunity. This argument is patently false from its first leap of logic. While the Secretary may authorize federal reserve banks (as well as other financial institutions) to receive tax payments, 26 U.S.C. § 6302(c), it is clear that those institutions receive the payments as agents for the United States. In short, the IRS is the Treasury's collection agent, not the Federal Reserve Board's. Tax dollars are used for governmental, not proprietary, purposes. It is thus clear that the IRS acts for the government as a governmental agency, and is entitled to the sovereign immunity of the United States. Plaintiff's disingenuous attempts to deny the facts do not change this conclusion. *See Cameron v. IRS*, 593 F.Supp. 1540, at 1549 (N.D.Ind.1984); *Young v. IRS*, 596 F.Supp. 141, at 147 (N.D.Ind.1984).

#### 2. Agent Dietrich

Plaintiff has also named IRS agent Dietrich as a defendant. None of the allegations of the complaint specifically describe his allegedly wrongful activities. However, the thrust of plaintiff's complaint is against the withholding of taxes from his wages, and so to the extent that Agent Dietrich was involved, the court assumes that his actions were done within his official capacity as an IRS agent in enforcing the withholding provisions of the Code.[1]

 As was noted earlier, the United States has not waived its sovereign immunity with respect to claims arising out of tax assessment or collection. One cannot avoid this sovereign immunity by simply naming officials when the judgment would impact upon the public treasury. *Vishnev-*

---

1. Additional support for this assumption is found in "Plaintiff's Answer to the Court in re of Instruments Submitted by the Defendants and/or their Counsel," in which the plaintiff describes a levy on his wages (¶ B–1(a) through (i)), and then states "it was John A. Dietrich

who did willingly aid and abate [sic] the defendant(s) in their unlawful type of action/actions." This strongly indicates that defendant Dietrich was named because of the action taken in his official capacity as an IRS agent.

*sky v. United States,* 581 F.2d 1249, 1255 (7th Cir.1978). At least one court has held that a suit against IRS officials in their official capacity is a suit against the United States, *see Nelson v. Regan,* 560 F.Supp. 1101 (D.Conn.1983), so that sovereign immunity would preclude the suit.

 The United States Supreme Court, in *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), discussed the extent of the immunity that a federal executive officer enjoys within the parameters of a federal agency position. The Court found that a federal official enjoyed only a qualified immunity, so that he could be liable individually if he knows or should have known that he is acting outside the law. *Id.* at 506–07, 98 S.Ct. at 2911. The Court recognized, however, that some officials need absolute immunity because it is "essential for the conduct of the public business." *Id.* at 507, 98 S.Ct. at 2911. Some courts have read *Butz* as giving absolute immunity to IRS officials in actions for damages. *Hutchinson v. United States,* 677 F.2d 1322 (9th Cir.1982); *Stankevitz v. IRS,* 640 F.2d 205 (9th Cir.1981); *Krzyske v. Commissioner,* 548 F.Supp. 101 (E.D.Mich.1982); *White v. Commissioner,* 537 F.Supp. 679, 684 (D.Colo.1982). If the officials are alleged to have exceeded their authority and to have operated outside the scope of their official duties, then only the qualified immunity applies. *Hutchinson,* 677 F.2d at 1328; *Nelson v. Regan,* 560 F.Supp. 1101 (D.Conn.1983); *Spilman v. Crebo,* 561 F.Supp. 652, 655–56 (D.Mont. 1982). In order to present a situation where only the qualified immunity will apply, the complaint must contain specific allegations of the unconstitutional conduct by the official, *White,* 537 F.Supp. at 684, and must allege the specific statutory provisions under which the official exceeded his authority. *Spilman,* 561 F.Supp. at 655–56.

 The tenor of plaintiff's complaint is that he seeks damages from Agent Dietrich for acts done in his official capacity as an IRS agent. The levy on a taxpayer's wages is clearly within the statutory power of the IRS and its agents, and the withholding of taxes is sanctioned by the Code. Because such acts are done within Agent Dietrich's official duties, the absolute immunity applies and the suit against him must fail. *See Cameron v. IRS,* 593 F.Supp. 1540, at 1550–1551 (N.D.Ind.1984); *Young v. IRS,* 596 F.Supp. 141, at 147–48 (N.D.Ind.1984).

Under the principles of summary judgment, the defendants have shown that there is no genuine issue of material fact in dispute between the parties, and the immunity of the IRS and Agent Dietrich entitles them to summary judgment as a matter of law. However, again out of an abundance of caution, this court now considers the merits of the various claims made by the plaintiff.

*C. Merits of the Claim*

Plaintiff's case is built around two arguments which plaintiff believes entitle him to recover: (1) that the tax laws do not apply to him; and (2) that his fourth amendment, fifth amendment and due process rights were violated. The court will analyze each of these contentions in turn.

1. The Applicability of the Tax Laws

Plaintiff's arguments for the inapplicability of the tax laws to him are somewhat convoluted. Liberally construed, the arguments rest upon the premise that plaintiff's wages are not income within the meaning of the sixteenth amendment.

 The plaintiff argues that only gain or profit can be income for taxation purposes. To support this claim, plaintiff cites to two Supreme Court cases, *Eisner v. Macomber,* 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521 (1919), and *Goodrich v. Edwards,* 255 U.S. 527, 41 S.Ct. 390, 65 L.Ed. 758 (1921), which cites the "income as gain" language of *Eisner.* Plaintiff also cites several very old lower federal court decisions as well. However, none of these cases were intended to be definitive definitions of income; in fact, all involved questions of specific former tax laws. The Supreme Court rejected an argument, based

on *Eisner,* that the Code's definition of income is limited to gain in *Commissioner v. Glenshaw Glass Co.,* 348 U.S. 426, 75 S.Ct. 473, 99 L.Ed. 483 (1955). The Court specifically stated that the "income as gain" definition of *Eisner* "was not meant to provide a touchstone to all future gross income questions." *Id.* at 431, 75 S.Ct. at 477. More recently the Court rejected the assumption that the current statutory definition of income (in 26 U.S.C. § 61) incorporated the income as gain definition of *Eisner.* *See Commissioner v. Kowalski,* 434 U.S. 77, 94, 98 S.Ct. 315, 325, 54 L.Ed.2d 252 (1977). Thus, the first assumption behind plaintiff's argument is simply incorrect—income is not limited to gain or profit.

The second half of plaintiff's argument is that wages are not profit or gain because they are given in equal exchange for the services he renders for Magnavox. Whether the economic view of wages as exchange for services is correct, the Supreme Court has, as noted above, rejected the notion that the income as gain concept is inherent in the § 61 definition of gross income. In *Kowalski,* the Court embraced the § 61 definition, *id.* at 83, 98 S.Ct. at 319, which defines the concept as follows: "... gross income means all income from whatever source derived, including ... (1) compensation for services...." This analysis has led the Seventh Circuit to declare in the clearest language possible that "WAGES ARE INCOME." *United States v. Koliboski,* 732 F.2d 1328, 1328 n. 1 (7th Cir.1984). Many other courts have reached the same conclusion. *See, e.g., Granzow v. Commissioner,* 739 F.2d 265, at 267 (7th Cir.1984); *Lively v. Commissioner,* 705 F.2d 1017 (8th Cir.1983); *Knighten v. Commissioner,* 702 F.2d 59, 60 (5th Cir.), *cert. denied,* — U.S. ——, 104 S.Ct. 249, 78 L.Ed.2d 237 (1983); *United States v. Romero,* 640 F.2d 1014, 1016 (9th Cir.1981). In *Romero,* the court rejected a "wages are not income" argument, and underscored its conclusion by noting: "Compensation for labor or services, paid in the form of wages or salary, has been universally held by the courts of this republic to be income, subject to the

income tax laws currently applicable." *Id.* at 1016. This court has also previously held that wages are income. *See Cameron v. IRS,* 1552; *Young v. IRS,* 149.

■ It is thus unmistakably clear that plaintiff is wrong in concluding that his wages are not taxable income. The initial assumption behind the argument (that income is gain or profit) is incorrect because it is not exclusive. True, a gain or profit is income. That does not, however, mean that all income must be a gain or profit. Section 61 makes clear that wages are income for taxation purposes, so that plaintiff's arguments are simply incorrect and without a basis in law. The tax laws therefore apply with full force to the plaintiff.

### 2. Fourth Amendment Claims

■ Plaintiff makes two claims under the fourth amendment. First, plaintiff argues that the withholding of monies from his wages constitutes an illegal "seizure." However, plaintiff does not have a fourth amendment interest to protect here. The Supreme Court has stated that a tax assessment "is given the force of a judgment, and if the amount assessed is not paid when due, administrative officials may seize the debtor's property to satisfy the debt." *Bull v. United States,* 295 U.S. 247, 260, 55 S.Ct. 695, 699, 79 L.Ed. 1421 (1935). In *Phillips v. Commissioner,* 283 U.S. 589, 596–97, 51 S.Ct. 608, 611, 75 L.Ed. 1289 (1931), the Court rejected a due process challenge to the statutory system of collecting taxes without a pre-seizing hearing. The *Phillips* Court held that as long as the taxpayer had an opportunity to have his rights determined after the seizure, the requirements of due process were satisfied. More recently, the Court applied this analysis to fourth amendment concerns as well. *G.M. Leasing Corp. v. United States,* 429 U.S. 338, 352 n. 18, 97 S.Ct. 619, 628 n. 18, 50 L.Ed.2d 530 (1977). The Court there found that fourth amendment concerns arise only when there is an invasion of the plaintiff's privacy. Here, no such invasion took place because the money was withheld when it was neither in plaintiff's private

possession nor subject to his private control. Of course, this same analysis applies to the levy on plaintiff's wages described in the "Plaintiff's Answer to the Court in re of Instruments Submitted by the Defendants and/or their Counsel" as well. With the ability to sue for a refund, plaintiff's rights can be protected without the need for fourth amendment causes of action. This court refuses to recognize a cause of action for the normal withholding of wages on fourth amendment grounds.

### 3. Fifth Amendment Claims

■ Plaintiff alleges a violation of his fifth amendment right against self-incrimination in being forced to give information without the assurance that the information would not be used against him. The Seventh Circuit has specifically stated that "we have no hesitation in holding that the Fifth Amendment has no application to the statutory requirement that every citizen must report his entire income even if a taxpayer is thereby compelled to disclose an incriminating fact." *United States v. Oliver*, 505 F.2d 301, 308 (7th Cir.1974). In short, plaintiff does not have a fifth amendment interest to protect when he turns information over to the IRS concerning his income. Therefore, his fifth amendment claim is without basis in the law.

### 4. Due Process Claims

■ Plaintiff alleges that his due process rights were violated because he requested an appeal and was denied. To the extent that plaintiff's allegation means that the IRS considered plaintiff's appeal and denied it because it was without merit, there was no violation of due process as plaintiff had an appeal. To the extent that plaintiff was not granted an appeal, he was not foreclosed from any reconsideration of his claim. Plaintiff still can sue for a refund, *see* 26 U.S.C. § 7422, after all the statutory prerequisites are met, and thus has not been foreclosed from receiving the process he is due. This court can perceive no harm done to plaintiff's due process rights.

### 5. Other Claims

■ Although not alleged in the complaint, other claims can be gleaned from plaintiff's numerous filings, and are addressed briefly here. Plaintiff asserts that a Final Notice sent to plaintiff (demanding that the plaintiff pay back taxes or have his wages levied) was a "Bill of Pains and Penalties," a lesser form of a Bill of Attainder. This court has twice before rejected the Bill of Attainder/Pains and Penalties argument. Current interpretation of the Bill of Attainder clause defines a bill of attainder as a legislative act which determines guilt and punishes an identifiable individual or group of individuals. *See Nixon v. Administrator of General Services*, 433 U.S. 425, 468, 97 S.Ct. 2777, 2802, 53 L.Ed.2d 867 (1977). However, none of these elements are present in tax protestor cases such as this. *See Cameron v. IRS*, 1555–1556; *Young v. IRS*, 150. This argument has been and continues to be meritless.

■ Plaintiff also briefly mentions the lack of an Office of Management and Budget ("OMB") number on certain IRS documents. Plaintiff gives no reason why this fact should matter. However, this court notes that it has previously held that IRS documents do not need to carry OMB numbers to be valid under 44 U.S.C. § 3512. *Cameron v. IRS*, 593 F.Supp. 1540 (N.D.Ind.1984). That allegation is simply meritless.

An analysis of defendants' converted motion to dismiss reveals that plaintiff has not asserted a competent basis for jurisdiction, cannot sue any of the defendants because they are immune, and even if he could overcome these two barriers to recovery, could not prevail because his complaint contains nothing other than meritless and baseless claims. It is abundantly clear that there are no genuine issues of material fact and that the defendants are entitled to judgment as a matter of law. This court will therefore grant the defendants summary judgment on the entire complaint.

## II. MOTION FOR FEES AND COSTS

■ The American Rule is that absent specific statutory or other expressed authorization, attorney fees are not recoverable by the prevailing party in a lawsuit. *International Union v. J. Pease Construction Co.,* 541 F.Supp. 1334, 1337 (N.D.Ill.1982). An exception to this rule has been recognized where a losing party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons...." *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 258–59, 95 S.Ct. 1612, 1622–23, 44 L.Ed.2d 141 (1975). *See McCandless v. Great Atlantic and Pacific Tea Co.,* 697 F.2d 198 (7th Cir.1983).

The Seventh Circuit has made clear that bad faith can include the pursuit of meritless suits. In *Analytica, Inc. v. NPD Research, Inc.,* 708 F.2d 1263 (7th Cir.1983), the court held that insistence on litigating a question in the face of controlling precedents which removed every colorable basis in law for the litigant's position amounted to bad faith justifying an award of fees. *Id.* at 1269–70. In *Reid v. United States,* 715 F.2d 1148 (7th Cir.1983), the Seventh Circuit stated that "the law may be so clear and well established that persistence in a course of litigation could be evidence of bad faith." *Id.* at 1154. Thus, this court has sufficient equitable power to assess sanctions for fees and costs if it finds that plaintiff's claim is meritless and in bad faith.

■ A second source of power to impose sanctions is found in the Federal Rules of Civil Procedure. Rule 11, which governs the signing of pleadings and motions, requires that each pleading or motion be signed by an attorney or the party (if the party is proceeding *pro se*). The rule then provides:

The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, other other paper; that to the best of his knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the exten-

sion, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

If a pleading violates this rule the court "shall impose" an "appropriate sanction," which may include the amount of reasonable expenses and attorney's fees incurred by the other party because of the filing of the pleading or motion.

■ The Notes of the Advisory Committee on the Federal Rules makes it clear that Rule 11's provisions are designed to "discourage dilatory or abusive tactics and [to] help streamline the litigation process by lessening frivolous claims or defenses." The rule applies to anyone who signs a pleading, motion, or other paper, and the same standards apply to *pro se* litigants, although the concerns of *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), can be taken into account.

■ The core of Rule 11 is that the signature on the pleading certifies that "to the best of his knowledge, information and belief *formed after reasonable inquiry* it [the pleading, motion or paper] is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law ..." (emphasis added). What is important to note is that this language requires more than just a belief that the law is or should be a certain way; as the Advisory Committee states, "what constitutes a reasonable inquiry may depend on ... whether the pleading, motion, or other paper was based on a plausible view of the law," and is thus a "more stringent" standard than good faith.

Despite the apparently objective nature of this standard, two recent Seventh Circuit opinions have emphasized that Rule 11 requires a finding of subjective bad faith on the part of the person against whom fees are to be assessed. *Suslick v. Rothschild Securities Corp.,* 741 F.2d 1000, at 1007 (7th Cir.1984); *Badillo v. Central Steel and Wire Co.,* 717 F.2d 1160, 1166–67 (7th

Cir.1983). What constitutes subjective bad faith is not completely clear, although the *Suslick* court did reemphasize that a claim lacking even a colorable basis in law can justify the award of fees. At 1006. However, it is clear that the Seventh Circuit has recognized the propriety of assessing fees in cases involving parties who claim not to owe income taxes or who file frivolous tax appeals. *See Granzow v. Commissioner*, 739 F.2d 265, at 269–270 (7th Cir.1984). Other circuits have also awarded costs for groundless actions involving the tax laws. *See Parker v. Commissioner*, 724 F.2d 469 (5th Cir.1984); *United States v. Hart*, 701 F.2d 749, 750 (8th Cir.1983); *McCoy v. Commissioner*, 696 F.2d 1234, 1237 (9th Cir.1983).

■■■ Under both general equitable principles and the provisions of Rule 11, this case is clearly one which merits the imposition of sanctions. Here, the plaintiff has argued that the Internal Revenue Code does not apply to him; yet courts have consistently ruled that wages are taxable income. Such argument in light of these clear precedents constitutes insistence on litigating a question in the face of controlling precedents that remove any colorable basis in law for the claim. This is precisely the kind of evidence which justifies a finding of subjective bad faith under the Seventh Circuit standard. Plaintiff's other meritless arguments are further evidence of bad faith. Even under the principles of *Haines v. Kerner*, and the deference to be accorded a *pro se* litigant's right to seek redress in court, this court finds that plaintiff's entire suit was frivolous and brought in bad faith.

■■■ In an analogous situation, the Seventh Circuit stated:

The doors of this courthouse are, of course, open to good faith appeals of what are honestly thought to be errors of the lower courts. But we can no longer tolerate abuse of the judicial review process by irresponsible taxpayers who press stale and frivolous arguments, without hope of success on the merits, in order to delay or harass the collection of public revenues or for other nonworthy purposes. . . . Abusers of the tax system have no license to make irresponsible demands on the courts of appeals to consider fanciful arguments put forward in bad faith. In the future we will deal harshly with frivolous tax appeals and will not hesitate to impose even greater sanctions under appropriate circumstances.

*Granzow v. Commissioner of Internal Revenue*, 739 F.2d 265, at 269–270 (7th Cir.1984). Similarly, the doors of this courthouse are open to good faith litigation, but abuse of the judicial process, as in this case, will not be tolerated. Accordingly, the defendants' request for attorney fees, costs and expenses will be granted. This court finds the reasonable attorney fees to be $500.00. *See Cameron v. IRS*, 593 F.Supp. 1540 (N.D.Ind.1984); *Young v. IRS*, 596 F.Supp. 141 (N.D.Ind.1984).

This court is concerned not only with compensating the defendants for their needless expense, but also with discouraging these baseless suits. The greatest harm inflicted by frivolous tax protestor suits such as this one is the enormous waste of precious judicial resources they cause. The time needed to dispose of these suits forces needless delay upon litigants with meritorious claims. This court refuses to condone further irresponsible uses of the courts. Rule 11 grants this court full power to impose sanctions upon litigants who file meritless pleadings and arguments, and all future litigants were warned by this court in footnote 4 of *Cameron v. IRS*. Although plaintiff was not aware of the holding in *Cameron*, he was informed in Open Court of the possibility that sanctions would be imposed against him. Analysis of the case leads this court to conclude that plaintiff should be fined $500.00 under Rule 11 for bringing this meritless suit.

### Conclusion

For the foregoing reasons, defendants' Motion to Dismiss is converted into a motion for summary judgment, and this court

hereby GRANTS the defendants summary judgment on the entire complaint. The court also GRANTS defendants' motion for fees and costs, and hereby ORDERS plaintiff to pay defendants $500.00 for having to defend against this meritless action. The court also hereby ORDERS plaintiff to pay $500.00 to the Clerk of this court as a Rule 11 sanction for filing this action.